1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16

**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **JOSE MANUEL URIBE SOLIS,** ) | **CV F 03-5535 AWI** |
| ) | **(CR F 00-5441 AWI** |
| **Petitioner**, ) | |
| ) | **ORDER ON PETITIONER'S** |
| **v.** ) | **MOTION FOR** |
| ) | **RECONSIDERATION, ORDER** |
| **UNITED STATES OF AMERICA,** ) | **TO SHOW CAUSE AND** |
| ) | **RELATED ORDERS** |
| **Respondent.** ) | |
| _____ ) | **(28 U.S.C. § 2255)** |

17        Petitioner Jose Manuel Uribe Solis ("Solis" or "Petitioner") was sentenced to a term of

18   imprisonment of 292 months on May 3, 2002, following his entry of a plea of guilty to one count

19   of conspiracy to distribute methamphetamine in violation of 21 U.S.C. 841(a)(1), and criminal

20   forfeiture pursuant to 21 U.S.C. 853(a).  Solis's first motion to correct, vacate or set aside his

21   sentence pursuant to 28 U.S.C. § 2255 was timely filed on April 29, 2003.  The pleading

22   addressed by this order is nominally a motion for reconsideration of the court's order of February

23   3, 2010, re-characterizing Solis's motion of March 2, 2009, as a second or successive motion

24   pursuant to 28 U.S.C. § 2255 and denying the motion on that account.  For the reasons that

25   follow, the court will grant Solis's motion for reconsideration and will address Solis's underlying

26   legal argument that he is entitled to be re-sentenced because he has successfully petitioned in

27   California courts for the expungement or vacatur of three of the four prior state convictions that

28   were used to enhance his sentence.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Solis was convicted by a plea of guilty on August 13, 2001, to one count of conspiracy to distribute methamphetamine.  Pursuant to the terms of the negotiated plea agreement, five counts of distribution of methamphetamine and one count of possession with intent to distribute methamphetamine were dropped.  Also pursuant to the plea agreement, Solis agreed to the criminal forfeiture of $8,734 that was seized at the time of his arrest.  Solis was sentenced on April 29, 2002 to a term of 292 months custody and 60 months supervised release.  Judgment was entered on May 3, 2002.

The Presentence Investigation Report ("Presentence Report") that was prepared for Solis' sentencing hearing calculated a base offense level of 38 because more than 15 kilograms of methamphetamine were involved in the offense.  The base level was increased by three points for Solis' alleged role as a manager or supervisor of the conspiracy, and three points were deducted because Solis accepted responsibility.  Thus, the total offense level was 38.  The Presentence Report calculated a criminal history score based on a total of four prior alleged convictions.  This score established a criminal history category of III.  Based on the 2000 edition of the Guidelines Manual, the guideline range for an offense level of 38 and a criminal history of III was 292 to 365 months.  Pursuant to the terms of the plea agreement, Solis was sentenced to the low end of that range.

Solis's petition for writ of habeas corpus pursuant to 28 U.S.C., section 2255 was timely filed on April 29, 2003.  Solis's 2255 Motion alleged ineffective assistance of counsel based, *inter alia*, on the alleged failure of Solis's attorney to investigate the validity of Solis's prior convictions in state court that were used to calculate his criminal history category.  Solis's 2255 Motion was denied by the court's order of May 18, 2004.  Doc. # 200.  On June 7, 2004, Solis filed a request for reconsideration of the court's May 18 order and requested a certificate of appealability.  Doc. # 202.

The court did not respond to Solis's requests for reconsideration or for issuance of a

1   certificate of appealability until September 11, 2009.  Prior to that date, on March 2, 2009, Solis

2   filed a pleading titled "Motion to Invalidate a Conviction Pursuant to Sentencing Guidelines

3   Section 4A1.2 (hereinafter, the "March 2 Motion").  Solis's March 2 Motion used language that

4   gave the court the impression that Solis was again alleging ineffective assistance of counsel,

5   again based on the failure of Solis's attorney to investigate the state convictions that were used to

6   enhance Solis's sentence.  What escaped the court's attention was the fact that Solis's March 2

7   Motion included exhibits that indicated Solis had succeeded in having three of the prior

8   convictions used to calculate Solis's criminal history category expunged[1].

9        On September 11, 2010, the court issued an order denying Solis's request for

10   reconsideration and request for certificate of appealability that had been filed on June 7, 2004.

11   The request for reconsideration raised the same issues as were raised in the original 2255 motion

12   and so was denied as a second or successive petition.  Unfortunately, the court made an error in

13   docketing that erroneously indicated that the court's order of September 11 was in response to

14   Solis's March 2 Motion, rather than in response to the requests of June 7, 2004.  On December

15   11, 2009, Solis filed a pleading titled "Request [for] Court's Intervention Pursuant to [28 U.S.C.

16   § 453].  On February 3, 2010, the court construed Solis's March 2 Motion as a subsequent or

17   successive motion pursuant to section 2255 and dismissed it.  A request for certificate of

18   appealability was also denied.  The instant motion for reconsideration pursuant to Rule 60(b) of

19   the Federal Rules of Civil Procedure was filed on June 1, 2010.

20                                    **LEGAL STANDARD**

21        Rule 60(b) permits a district court to relieve a party from a final order or judgment on

22   grounds of:  "(1) mistake, inadvertence, surprise, or excusable neglect; (3) fraud . . . of an

23   adverse party, . . . or (6) any other reason justifying relief from the operation of the judgment."

24   The motion for reconsideration must be made within a reasonable time, in any event "not more

25

26        [1]  The term "expunged" is something of a term of art that can refer, depending on the context, to a court
    decision that completely reverses a conviction and all legal consequences associated with it or a lesser action that

27   removes some but not all legal impediments of conviction.  In this context the term is used in its broadest sense.

28                                         3

1   than one year after the judgment, order, or proceeding was entered or taken." Id.

2        Motions to reconsider are committed to the discretion of the trial court. Combs v. Nick

3   Garin Trucking, 825 F.2d 437, 441 (D.C.Cir. 1987); Rodgers v. Watt, 722 F.2d 456, 460 (9th

4   Cir. 1983) (en banc).  To succeed, a party must set forth facts or law of a strongly convincing

5   nature to induce the court to reverse its prior decision.  See, e.g., Kern-Tulare Water Dist. v. City

6   of Bakersfield, 634 F.Supp. 656, 665 (E.D.Cal. 1986), aff'd in part and rev'd in part on other

7   grounds, 828 F.2d 514 (9th Cir. 1987), cert. denied, 486 U.S. 1015, 108 S.Ct. 1752, 100 L.Ed.2d

8   214 (1988).

9        Rule 59(e) permits a court to alter or amend a judgment where there is clear error or the

10  initial decision was manifestly unjust.

11                      **DISCUSSION**

12  **I. Motion for Reconsideration**

13       Solis's instant motion for reconsideration, Doc. # 214, requests review of the court's

14  order of February 3, 2010, that denied Solis's March 2 Motion.  Doc. # 209.  Solis's March 2

15  Motion had been interpreted by the court to be a restatement of essentially the same arguments

16  and facts that were advanced by Solis in the portion of his original 2255 Motion that claimed

17  ineffective assistance of counsel on the ground that his attorney failed to investigate the legality

18  of the state criminal convictions that formed the basis for the computation of his criminal history

19  category.  That interpretation was driven in part by the wording set forth in the March 2 Motion,

20  which again tended to focus on Solis's attorney's performance, and by the fact that Solis has

21  made these arguments on at least two prior occasions.

22       Re-characterization of a motion filed by a pro se litigant is within the district court's

23  powers and is frequently used to more precisely match the substance of the pro se claim and its

24  underlying legal basis. Castro v. United States, 540 U.S. 375, 381 (2003); Hughes v. Rowe, 449

25  U.S. 5, 10 (1980); United States v. Eatinger, 902 F.2d 1383, 1385 (9th Cir. 1990).  The re-

26  characterization of a pro se litigant's motion for reconsideration is significant in the context of

27

28                      4

post-conviction remedies because re-characterization in that way generally prevents the district

court from the exercise of jurisdiction over the pleading pursuant to 28 U.S.C. § 2255(h)

(depriving district court of jurisdiction to hear any motion that is deemed a second or successive

motion pursuant to section 2255 without authorization of the appellate court).  Whether a motion

for reconsideration is construed by the court as a second or successive habeas petition depends on

whether the motion for reconsideration focuses on the substance of the district court's prior

decision or whether the motion for reconsideration attempts to point out a fundamental error in

the court's analysis.  See Thompson v. Calderon, 151 F.3d 918, 921 (9th Cir. 1998) (where "the

factual predicate for a Rule 60(b) motion also states a claim for a successive petition under 28

U.S.C. § 2244(b), [. . .], the Rule 60(b) motion should be treated as a successive habeas

petition").  In restricting a *pro se* litigant's attempt to re-argue the district court's denial of the

original section 2255 motion, Congress promotes the policy purpose of finality of judgments by

preventing serial re-argument of the same motion under different labels.    United States v.

Christensen, 119 Fed.Appx. 884, 887 (9th Cir. 2004).

    To avoid confusion, it should be understood that there are potentially two levels of re-

characterization at issue here.  The court has previously re-characterized Solis's March 2 Motion

as a second or successive section 2255 motion.  In addition to determining whether that re-

characterization was correct, the court must also determine whether Solis's instant motion for

reconsideration should be re-characterized as a second or successive section 2255 motion.  Thus,

the court will first make a determination whether Solis's motion for reconsideration of June 1,

2010, should be re-characterized as a second or successive motion pursuant to 28 U.S.C. § 2255.

If Solis's motion of June 1 is properly considered second or successive section 2255 motion, then

the enquiry ends there.  If not, the court will then proceed to decide whether Solis's March 2

Motion was properly re-characterized by the court and, if not, whether and how Solis's March 2

Motion should be re-characterized and whether that motion can be considered on its merits.

    Whether it was Solis's sole purpose or not, the main impact of his June 1, 2010, motion

for consideration was to bring to the court's attention the fact that legal basis of the argument Solis advanced March 2 Motion was fundamentally different than Solis's previous challenges to his sentence and that the court had overlooked the crucial fact that Solis had presented evidence of expungement of state prior convictions.  The court has examined both the evidence presented as exhibits in the March 2 Motion and finds that the court's oversight of these pieces of evidence constitutes clear error.  Thus, the effect of Solis's motion for reconsideration is not to reargue claims that were previously decided by the court, but to point out that claims and evidence were submitted in the March 2 Motion that were mistakenly overlooked in the court's June 1 Order.  Thus, the court finds Solis's motion for reconsideration of the court's Order of June 1, 2010, is proper and re-characterization of the motion is not warranted.  The court also finds that the court's oversight of both evidence and argument in the court's order of June 1, 2010, amounts to clear error and that reconsideration of that order is warranted.

Solis's instant motion for reconsideration of the court's order of June 1, 2010 is hereby GRANTED.

**II.  Solis's March 2 Motion**

Solis's March 2 Motion was re-characterized by the court As a second or successive motion pursuant to 28 U.S.C. § 2255 and was dismissed on that basis.  Upon reconsideration, the court must examine whether Soliss' March 2 Motion should be re-characterized, and if so how.  Similarly, before the court can reach the merits of Solis's motion the court must consider whether the motion is second or successive and whether it is timely.  The court will consider each of these preliminary issues in turn.

### A.  Re-Characterization and Construal

As noted above, district courts have authority to re-characterize *pro se* pleadings to achieve, among other purposes, a closer match between the pleading and the underlying law and facts that support it.  Solis's March 2 Motion is titled "Motion to Invalidate a Conviction Pursuant to Sentencing Guidelines 4A1.2 Note 6."  Obviously, the sentencing guidelines provide

no authority for the invalidation of a conviction.  Similarly, Solis's March 2 Motion invokes no authority to accomplish what the title seeks.  By its own term, the title of Solis's March 2 Motion challenges his conviction or, more accurately, his sentence.  The general jurisprudence of district courts holds that any post conviction pleading other than an appeal that challenges the validity of a conviction or sentence is properly construed as a motion pursuant to 28 U.S.C. § 2255.  See United States v. Christensen, 119 Fed. Appx. 884, 887-888 (9th Cir. 2004) (noting practice of district courts construing various types of pleadings challenging sentence or conviction as section 2255 motions).  Based on the foregoing, the court finds its order of June 1 re-characterizing Solis's March 2 motion as a motion pursuant to 28 U.S.C. § 2255 was not erroneous.

A second issue raised by Solis's pleadings is how his March 2 Motion should be construed.  As previously noted, Solis's March 2 Motion followed a series of other pleadings beginning with the original 2255 Motion that challenged Solis's sentence based on the failure of his attorney to investigate and challenge the validity of his prior state convictions, at least insofar as those convictions were or were not properly used in the calculation of Solis's criminal history category.  A cursory reading of most of Solis's March 2 Motion leaves the reader with the strong impression that Solis has returned with the same facts to make the same argument that was made more than once before; that is, that he received ineffective assistance of counsel because of the failure of his attorney to adequately challenge his prior state convictions.

It is not until page 5 of Solis's March 2 Motion that there is an indication that something different is afoot.  At page 5 of Solis's pleading he alleges that he "obtained the dismissal from the State Court on three of the prior cases that were used as prior convictions to increase his sentence."  Doc. # 209 at 5:19-21.  Significantly, on the sixth page of Solis's March 2 Motion, Solis clarifies that factual basis for his attack on the validity of his state convictions is that he was denied any assistance of counsel during his sentencing on those state charges.  Solis goes on for a couple of pages describing the state cases involved and some details behind his claims of Gideon error.  To the court's knowledge, Solis's March 2 Motion is the first time  Solis has set forth the

1   basis for his challenge to his state convictions in any detail in this court.  Also of some

2   significance, Solis's March 2 Motion continues to allege ineffective assistance of counsel,

3   theorizing that if Solis was able to achieve the dismissal of three of his prior convictions, then his

4   attorney should have been able to do the same prior to the time of sentencing.

5         As will be explained in more detail below, there is a fundamental difference between a

6   challenge to a sentence based on an attorney's failure or refusal to challenge the validity of the

7   petitioner's state court prior convictions, and a petitioner's challenge to his sentence based on the

8   *fact* of the expungement of his prior state court convictions after his federal sentence was

9   imposed.  Stated briefly here and in more detail below, the failure or refusal of an attorney in a

10  federal case to challenge the legality of a defendant's state prior convictions is not a basis for

11  habeas relief (subject to limited exception), but the fact of expungement of a prior state

12  conviction after federal sentencing may be grounds for habeas relief.  See Custis v. United States,

13  511 U.S. 485 (1994); Daniels v. United States, 532 U.S. 374, 376 (2001); Johnson v. United

14  States, 544 U.S. 295, 303-304 (2005).

15        The limited exception cited by Custis and Daniels to the general rule that a federal section

16  2255 motion may not be used to attack a prior state conviction occurs where the basis for the

17  challenge of the state claims is violation of the right of representation as set forth in Gideon v.

18  Wainwright, 372 U.S. 335 (1963).  Johnson, 544 U.S. at 303.  Based on this, the court could

19  reasonably construe Solis's March 2 Motion as a re-assertion of Solis's claim of ineffective

20  assistance of counsel, however this time more specifically based on the failure of his attorney to

21  challenge the state court convictions on the ground of Gideon error.  This approach, however,

22  appears to the court to involve a number of difficult-to-resolve factual issues and could

23  potentially fail to address the central piece of information provided by Solis's March 2 Motion –

24  that Solis was able to achieve expungement of three of his state convictions.  The court finds that

25  a much more direct and determinative approach would be to construe Solis's March 2 Motion as

26  a *new* section 2255 motion seeking correction of his sentence based on Johnson.

27

28                                          8

In the interests of justice and in the interests of conservation of scarce judicial resources, the court construes Solis's March 2 Motion as a new motion pursuant to 28 U.S.C. § 2255 to correct his sentence on the ground that three of the prior state convictions that were used to calculate Solis's criminal history category have been vacated or expunged.

### B. Second or Successive

The jurisdiction of a court to consider second-in-time motions pursuant to 28 U.S.C. § 2255 is limited by subsection 2255(h), which provides that:

A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain -

(1)    newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or

(2)    a rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

Accordingly, if literal meaning is to be ascribed to the statute, "a petitioner [in this circuit] must move for authorization from [the Ninth Circuit Court of Appeals] to file a 'second or successive' § 2255 motion in the district court, and the motion will be denied unless the petitioner makes a prima facie showing that satisfies the § 2255(h)(1) gatekeeping requirements." United States v. Lopez, 577 F.3d 1053, 1061 (9th Cir. 2009) ("Lopez").  The Lopez court observed that the Supreme Court has not always read "second or successive" literally.  Id. at 1062 (noting that in Stewart . Martinez-Villareal, 523 U.S. 637, 644-645 (1998) the Supreme Court declined to construe a section 2255 motion as "second or successive" where a Ford competency-to-be-executed claim could not have ripened until substantially after the filing deadline for other section 2255 motions).

The provisions set forth in 28 U.S.C. §§ 2244 and 2255 codify the gatekeeping functions of the Antiterrorism and Effective Death Penalty Act ("AEDPA").  The decision in Lopez, which sets forth this circuit's most comprehensive review of the issue of what is "second or successive"

for purpose of section 2255, notes that the AEDPA represents Congress's codification of some of

the pre-existing limitations on successive petitions that fell under the rubric of "abuse-of-the-writ

doctrine." Lopez, 577 F.3d at 1066.  In Panetti v. Quarterman, 551 U.S. 930 (2007), the

Supreme Court noted "[t]he phrase 'second or successive' is not self-defining.  It takes its full

meaning from our case law, including decisions predating the enactment of [AEDPA]."  Id. at

943-944.  It is clear that no court interpreting "second or successive" within the meaning of

AEDPA "has ever held [that] AEDPA *expands* the availability of habeas relief or allows federal

courts to consider claims that would have been barred under the abuse-of-the-writ doctrine."

Lopez, 577 F.3d at 1066.  However, in surveying the very limited case authority available, the

Lopez court noted that the Panetti Court held the literal application "second or successive"

should be tempered in carefully circumscribed circumstances where literal application of

ADEPA's "second or successive" bar would be expected to prevent access to legitimate claims

for habeas relief that seldom ripen before the limitations period set forth in section 2255 is

passed.  Id. at 1063.  The Lopez court explained the Supreme Court's jurisprudence on the issue

as follows:

> The [Supreme] Court cited three considerations supporting its conclusion [in
> Panetti] that Congress did not intend to subject unripe *Ford* claims to ADEPA's
> gatekeeping provisions: (1) the implications for habeas practice of adopting a
> literal interpretation of "second or successive," (2) the purposes of AEDPA and
> (3) the Court's prior habeas corpus decisions, including those applying abuse-of-
> the-writ doctrine. [. . . .] The court cautioned against interpreting AEDPA's
> "second or successive" provisions in a way that would foreclose any federal
> review of a constitutional claim, or otherwise lead to perverse results, absent a
> clear indication that Congress intended that result. [. . . .] Usually "a petitioner
> filed second in time and not otherwise permitted by the terms of § 2244 will not
> survive AEDPA's 'second or successive' bar," but the court was reluctant to
> construe the statute "in a manner that would require unripe (and, often factually
> unsupported) claims to be raised as a mere formality [in the first petition]."
> [Citation.]

Id. (internal citations to Panetti omitted).

As the Lopez court noted, case authority dealing with exception to AEDPA's "second or

successive" gatekeeping restriction is sparse and neither the Supreme Court nor the Ninth

Circuit has applied the factors set forth in Panetti widely to other category of petition for

10

exception to AEDPA's "second or successive bar.  Lopez, 577 F.3d at 1063.  The Lopez court,

which considered whether the "second or successive" bar applied to a claim of Brady violation

held that Brady claims "are not categorically exempt from AEDPA's gatekeeping provisions."

Id. at 1067. Rather, the Lopez court interpreted subdivisions 2255(h)(1) and (h)(2) as embodying

the materiality requirement of the pre-AEDPA abuse-of-the-writ doctrine and held that, at

minimum, a habeas claim that fails to establish materiality is subject to the jurisdictional bar of

AEDPA's "second or successive" requirement.  Id.  The Lopez court offered the following

generalized observation:

> Our post-AEDPA decisions have sometimes focused only on the cause inquiry
> when summarizing the abuse-of-the-writ doctrine.  See, e.g., Woods v. Carey, 525
> F.3d 886, 888 (9th Cir. 2008) ("Generally, a new petition is 'second or successive'
> if it raises claims that were or could have been adjudicated on their merits in an
> earlier petition."  (internal quotation marks omitted)).  But as we also recognized,
> establishing a legitimate excuse for not bringing the claim sooner is necessary but
> not itself sufficient: "If the petitioner can show cause for his failure to raise the
> claim, he then must demonstrate 'actual prejudice resulting from the errors of
> which he complains.'" [Allen v. Ornoski, 435 F.3d 946, 956 (9th Cir. 2006)
> (internal quotations omitted) (quoting McCleskey v. Zant, 499 U.S. 467, 494
> (1991)).]

Lopez, 577 F.3d at 1068 n.13.  This observation from Lopez gives context to the more

generalized rule normally cited by this court which holds that "'a new petition is "second or

successive" if it raises claims that were or could have been adjudicated on their merits in an

earlier petition.'" [Citation.]" Woods v. Carey, 525 F.3d 886, 888 (9th Cir. 2008).

    Having construed Solis's March 2 Motion as a new section 2255 motion, there can be no

doubt that is at least second- or third-in-time.  Pursuant to Lopez and Woods, this court

determines whether it has jurisdiction to consider the merits of Solis's claim under AEDEPA's

gatekeeping provisions by first determining whether if Solis's claim was, or could have been,

raised in an earlier petition.  If that question is answered in the negative, the court determines

whether actual prejudice is shown.

    As explained *supra*, Solis's earlier attempts to challenge the validity of his state court

claims, or to allege ineffective assistance of counsel based on his attorney's failure to mount a

1   challenge to those convictions, were fundamentally different from the instant claim that he is

2   entitled to correction of his sentence because of the *fact* of the expungement or vacatur of those

3   convictions.  Whereas Solis's earlier claims were grounded on the contention that his state

4   convictions *could have been* vacated, reversed or expunged; the March 2 Motion is grounded in

5   the fact that those state convictions *have been* expunged or vacated.  By its own terms, the nature

6   of the claim now before the court in the March 2 Motion (as construed) could not have been

7   brought until after the vacatur or expungement of the state convictions was an accomplished fact.

8   As the Court in Johnson explained, the relief recognized by Custis and Daniels arises where a

9   defendant's sentence in a federal conviction is enhanced by state convictions that are vacated due

10  to the efforts of the petitioner in state court sometime *after* he is sentenced in the federal court.

11  Johnson, 544 U.S. at 304.

12          The court finds that Solis's March 2 Motion was not and could not have been adjudicated

13  on the merits in an earlier proceeding because the legal basis for Solis's claim did not ripen until

14  the expungement or vacatur of the state convictions had actually been accomplished.  According

15  to evidence provided by Solis, that did not occur until 2008.  In finding that the March 2 Motion

16  was not, and could not have been, adjudicated on its merits in an earlier proceeding, the court

17  interprets "could not have been adjudicated" as referring to the legal basis for the claim, not

18  Solis's diligence in pursuing the expungement or vacatur of his state convictions.  As will be

19  discussed in some detail below, the Supreme Court's decision in Johnson makes it clear that the

20  diligence of the petitioner in pursuing expungement or vacatur of his state convictions is an issue

21  of timeliness, not of the legal basis of the claim.  Johnson, 544 U.S. at 304-305.  Solis's

22  timeliness in challenging his state claims will be discussed *infra*.

23          In Lopez, the appellate court declined to find an exception to AEDPA's gatekeeping

24  provisions because the petitioner's Brady claim in that case, even if proven, would not have

25  made a difference in the outcome of the petitioner's state conviction.  Lopez, 577 F.3d at 1067.

26  Based on the discussion in Lopez, this court interprets "materiality" as that term is used in

27

28                                              12

conjunction with the abuse-of-the-writ doctrine, to encompass two elements; the substantial

nature of the claim asserted – that is, the probability that relief, if granted, will make a substantial

difference in the Solis's sentence – and the probability that facts pled warrant a grant of the relief

requested.

As discussed, <u>Johnson</u>, and the cases it interprets note that re-sentencing in the event of

vacatur or expungement of state convictions used to enhance a federal sentence is an entitlement.

<u>Id.</u> at 303.  Solis alleges that if his sentence were corrected so that the vacated state convictions

were not used to calculate his criminal history category, the result would be a criminal history

category of I instead of III with a resulting term of imprisonment of 235 months instead of the

292 months actually imposed.  The court finds the claim of entitlement to a term  of

imprisonment that is years less that the term originally imposed is substantial within the meaning

of the abuse-of-the-writ doctrine.

With regard to probability of success, the court has examined the probability of Solis's

success on the merits and finds that Solis has submitted substantial evidence to support facts that,

if found true, would entitle him to at least partial relief.  As will be discussed in more detail *infra*,

there is some question as to whether Solis's would be entitled to relief as to one of the three state

convictions, however, there is no doubt the facts pled support entitlement to the other two, nor is

there any doubt that relief as to the other two would result in a lesser sentence.  For purposes of

the court's analysis of abuse-of-the-writ doctrine, the court finds Solis, having alleged facts and

proffered evidence sufficient to show both the substantial nature of the relief requested and the

probability of success, has made the necessary showing of materiality withing the meaning of

<u>Lopez</u> and the abuse-of-the-writ doctrine.

This court further finds that the application of exception to AEDPA's "second or

successive" bar in this case is necessary to prevent preclusion of claims under <u>Custis</u>, <u>Daniels</u>,

and <u>Johnson</u>, that, by their own terms, can only ripen after sentencing and that typically take

considerable time to ripen.  This court also finds that here, as in <u>Panetti</u>, the literal application of

13

the 'second or successive' bar in this case would have the perverse effect of frustrating the

purposes of AEDPA by clogging the district court with meritless petitions from defendants

whose sentences are enhanced by state prior convictions section 2255 claims so that they can

preserve the right to request re-sentencing on the rather remote possibility they might later be

successful in vacating one or more state convictions.

The court concludes that Solis's March 2 motion is properly re-characterized as a new

section 2255 motion but that it falls within the narrow range of second- or successive-in-time

section 2255 motions that should not be barred by AEDPA's gatekeeping provisions.  The court

therefore finds that Solis's March 2 Motion is not "second or successive" within the meaning of

28 U.S.C. § 2255(h).

### C. Timeliness

The primary issue before the <u>Johnson</u> court was whether the petitioner had filed his

section 2255 motion timely.  The timeliness inquiry as addressed by the <u>Johnson</u> court in the

context of a section 2255 claim for correction of a sentence after vacatur of prior state court prior

convictions has two components.  First, the event that commences the running of AEDPA's one-

year statute of limitations must be identified and, second, it must be determined whether the

petitioner has exercised due diligence in pursuing the vacatur in the state court.  <u>Johnson</u>, 544

U.S. at 302.

Section 2255(f) provides that the one-year statute of limitations on an action under the

section begins to run at the latest of: (1) the date of the judgment of conviction becomes final; (2)

the date on which a government-created impediment to bringing a section 2255 action is

removed; (3) the date on which a right to bring the action was initially recognized by the

Supreme Court, if the right has been newly recognized and made retroactively applicable to cases

on collateral review; or, (4) the date on which the facts supporting a claim could have been

discovered through the exercise of due diligence.  28 U.S.C. § 2255(f) (1)-(4).  The <u>Johnson</u>

Court held that the "discovery" of the vacatur or expungement of a state court conviction that

1  was used to enhance a federal sentence is a "fact" for purposes of sub-paragraph 4. <u>Johnson</u>, 544

2  U.S. at 296.  Thus, pursuant to <u>Johnson's</u> holding, the one-year limitations period imposed by 28

3  U.S.C. § 2255(f)(4) begins to run when the petitioner "discovers" that a state court[2] has vacated

4  or expunged a conviction that was used to enhance the petitioner's federal sentence.

5       The pleading the court has construed as a new section 2255 motion to correct the sentence

6  was filed on March 2, 2009.  Although the dates of the state court orders vacating the convictions

7  are either indistinct or absent from the copies submitted to this court from the Merced Superior

8  Court, it is clear from dates that Solis's motions for expungement were filed that none of the

9  orders could have been filed earlier than April 1, 2008.  Thus, the time elapsed between the

10  orders of the state courts and the filing of the March 2 Motion is, in each case, less than one year.

11  The court therefore finds Solis's March 2 Motion is filed within the time period required under

12  28 U.S.C. § 2255(f)(4).

13       The <u>Johnson</u> Court considered various points in time where the duty of a petitioner to

14  diligently pursue discovery of the "fact" of the vacatur or expungement of any prior state

15  convictions could accrue.  The Court held that the duty to diligently pursue the vacature or

16  expungement of the state convictions accrues when judgment of conviction is entered in the

17  federal court.  <u>See id.</u> at 310 (from the date of entry of judgment the petitioner is "obliged to act

18  diligently to obtain the state-court order vacating his predicate conviction").  As previously

19  noted, the 1-year limitations period runs from the date the petitioner receives notice of the order

20  of vacatur.  <u>Id.</u>

21       While evidence of Solis's diligence is less well developed, it is clear the court is without

22  a basis at this point to find that Solis was less than diligent in seeking vacatur of his state

23  convictions from the time of the judgment in this case.  First, as Solis points out, he has been

24  asserting that his state law convictions were vulnerable to challenge since his first habeas petition

---

26      [2]   A second possibility not of relevance here would be the situation in which a petitioner successfully

27 challenged a state conviction under the <u>Gideon</u> exception to the general rule set forth in <u>Daniels</u> and <u>Custis</u> in federal court in a separate section 2255 proceeding.

28                  15

1   was filed in 2003.  While it is true that Solis has been knocking on the wrong door for the

2   majority of the time since 2003, the court cannot find that Solis's past deficient pleadings or the

3   fact that his pleadings may have been misdirected are an indication of lack of diligence.  Second,

4   Solis alleges in his March 2 Motion that he began corresponding with state courts in 2006 for the

5   purpose of gathering information to bring his actions for vacatur.  Given that Solis's motion for

6   reconsideration of the initial denial of his first section 2255 motion was still pending in this court

7   at the time, and given that the court's initial response to Solis's first section 2255 motion did not

8   make it clear that Solis would have to pursue challenges to his state prior convictions in state

9   court, this court cannot conclude Solis was less than diligent in pursuing those claims when he

10  did not begin correspondence with the state courts until 2006.

11          The court finds that Solis was reasonably diligent in pursuing vacatur of his state

12  convictions through the state courts and that his March 2 Motion was filed within the one-year

13  statute of limitations provided by 28 U.S.C. § 2255(f)(4).  The court therefore finds that Solis's

14  March 2 Motion was timely filed.

15  **III.  Merits of Solis's 2255 Motion**

16          Having determined that Solis's March 2 Motion is to be construed as a new section 2255

17  motion and that the motion is not second or successive within the meaning of § 2255(h) and

18  having determined the March 2 Motion is timely within the meaning of § 2255(4), the court now

19  proceeds to the actual reconsideration of its order of February 3, 2010, by considering anew the

20  merits of Solis's argument that he is entitled to be resentenced based on a revised determination

21  of his criminal history category that omits prior state convictions that have been vacated.

22          Under section 2255, "a district court must grant a hearing to determine the validity of a

23  petition brought under that section, '[u]nless the motions and the files and records of the case

24  conclusively show that the prisoner is entitled to no relief.' "  United States v. Blaylock, 20 F.3d

25  1458, 1465 (9th Cir.1994) (quoting 28 U.S.C. § 2255).  The court may deny a hearing if the

26  movant's allegations, viewed against the record, fail to state a claim for relief or "are so palpably

27

28                                                16

incredible or patently frivolous as to warrant summary dismissal." United States v. McMullen, 98 F.3d 1155, 1159 (9th Cir.1996) (internal quotations omitted), cert. denied, 520 U.S. 1269, 117 (1997).  To earn the right to a hearing, therefore, the movant must make specific factual allegations which, if true, would entitle him to relief.  Id.  Mere conclusory statements in a section 2255 motion are insufficient to require a hearing.  United States v. Hearst, 638 F.2d 1190, 1194 (9th Cir.1980), cert. denied, 451 U.S. 938 (1981).

"[A] defendant who successfully attacks a state conviction may seek review of any federal sentence that was enhanced because of the prior state conviction."  United States v. LaValle, 175 F.3d 1106, 1108 (9th Cir. 1999).  What complicates the analysis, for present purposes, is the fact that the terms "vacatur" or "expungement" as used in California law can mean something very different than is meant in LaValle, Johnston and related cases.  In California, "expungement" may be granted pursuant to California Penal Code § 1203.4.  As recognized in United States v. Hayden, 255 F.3d 768 (9 Cir. 2001), regardless of the labels used in section 1203.4, that section:

> does not, properly speaking, "expunge" the prior conviction.  The statute does not purport to render the [prior state] conviction a legal nullity.  Instead it provides that, except as elsewhere stated, the defendant "is released from all penalties and disabilities resulting from the offense."  The limitations are numerous and substantial . . . .
>
> Indeed, section 1203.4 contains a sweeping limitation on the relief it offers, stating that "in any subsequent prosecution of the defendant for any other offense, the prior conviction may be pleaded and proved and shall have the same effect as if probation had not been granted or the accusation or information dismissed."  *This provision alone precludes any notion that the term "expungement" accurately describes the relief allowed by the statute.*

Hayden, 255 F.3d at 771-772 (quoting People v. Frawley, 82 Cal.App.4th 784 (2000) citations omitted, emphasis in quotation)).

As pointed out in Hayden, section 4A.2 of the United States Sentencing Guidelines ("USSG") defines what is and is not to be considered as a prior conviction for purposes of computation of a defendants's criminal history category.  Pursuant to that section "[s]entences for expunged convictions are not counted, but may be considered under § 4A1.2 (Adequacy of

17

1  Crimnal History Category).”  Id.; Hayden, 255 F.2d at 770.  As noted in Hayden, the comment to

2  USSG § 4A1.2 explains:

3         A number jurisdictions have various procedures pursuant to which previous
          convictions may be set aside or the defendant may be pardoned for reasons
4         unrelated to innocence or errors of law, e.g. in order to civil rights or to remove
          the stigma associated with a criminal conviction.  Sentences resulting from such
5         convictions are to be counted, However, expunged convictions are not counted.

6  Id. at 770-771 (quoting comment to USSG § 4A1.2).

7         After thorough review of the limitations placed on the extent of “expungement” under

8  Cal. Penal Code § 1203.4 for purposes of sentencing under California’s “three-strikes” law, as

9  well as in the contexts of administration of various licensing procedures, the Hayden court

10 concluded that “[a] conviction set aside pursuant to California Penal Code section 1203.4 is not

11 ‘expunged’ under Sentencing Guideline § 4A1.2.”  255 F.3d at 774.  The touchstone of the

12 court’s determination of whether an action by a state court that vacates a state court conviction is

13 an “expungement” for purposes of Sentencing Guideline § 4A1.2 is whether the court’s action

14 was taken “‘for reasons unrelated to innocense or errors of law.’”  Id. at 771 (quoting note to

15 Sentencing Guideline § 4A1.2).  The vacatur of a state convictions for reasons that are *other than*

16 reasons related to innocense or errors of law is not an “expungement” for sentencing purposes

17 under federal guidelines.

18        Solis’s March 2 Motion presents evidence that three of the four convictions that were

19 used to enhance his sentence were vacated in 2008.  Two of those convictions were vacated by

20 the Merced Superior Court and included a conviction from 1991 for receiving stolen property in

21 Los Banos Municipal Court No. LBF5092, and a conviction for failure to care for an animal in

22 1995 in Merced Municipal Court Case MM138429.  The third conviction was for driving under

23 the influence of alcohol in 1994 in Tahoe Justice Court, case number 940908.  The court has

24 examined the exhibits appended to the March 2 Motion.  With respect to each of the convictions

25 that were vacated, Solis’s claim before the state court was that he was unrepresented by counsel

26 when his attorney, who in each case was appointed to represent Solis at the inception of each

27

28                                          18

case when the case was filed as a felony, discontinued representation of Solis when the charges were reduced to misdemeanors.  Thus, Solis alleges with respect to each of the three cases that he was unrepresented by any attorney at any time after the reduction of the charges against him, including at sentencing.

With respect to the two convictions vacated by the Merced Superior Court, the documentation of the court's action that is presented as an exhibit to Solis's March 2 Motion consists of two single-page, pre-printed orders, one for each case, in which checks were applied to the following paragraphs:

[✓]   The Court grants the above Petition.  The Court finds from the records on file in this case, and from the foregoing petition, that the defendant is eligible for the relief requested.

[¶ . . . ¶]

[✓]   It is ordered that the plea, verdict or finding of guilt in the above entitled action be set aside and vacated and a plea of not guilty be entered; and that the complaint be, and is hereby, dismissed.  *If* this order is granted under the provisions of Penal Code § 1203.4, the defendant is required to disclose the above conviction in response to any direct question contained in any questionnaire or application for public office or licensure by any state or local agency, or for contracting with the State of California Lottery.

[✓]   *If* the order is granted under the provisions of either Penal Code Section 1203.4 or 1203.4(a), the defendant is released from all penalties and disabilities resulting from the offense except as provided in Penal Code sections 12021 and 12021.1 and Vehicle Code section 13555.  The dismissal does not permit a person to own, possess, or have in his or her control a firearm if prevented by Penal Code sections 12021 or 12021.1.

Doc. # 209 at 22 (italics added).

The court finds that two orders of the Merced Superior Court[3] vacating Solis's convictions are completely ambiguous with regard to whether the vacatur is pursuant to Solis's argument that he suffered a depravation of right to counsel or whether the vacatur was issued pursuant to Penal Code §1203.4.  At this point, however, Solis's burden is satisfied if he alleges facts that, if true, would entitle him to relief.  McMullen, 98 F.3d at 1159.  Having produced

---

[3]       The court notes that all three of Solis's state convictions originated in municipal or justice court's prior to the consolidation of California municipal and superior courts as a result of Proposition 220 in 1998.  The consolidation of the courts has no bearing on the validity of Solis's claims, but may have some bearing on the availability of state court documents in 2008.

1   evidence that the Merced Superior Court issued the orders of vacatur and having produced

2   evidence to show that the issue of Gideon error was before the superior court at the time the

3   vacatures were issued, the court finds Solis has carried his burdens of production and proof

4   sufficient to warrant government's response and hearing on the issue.

5       With regard to the vacatur of the 1994 conviction in the Tahoe Justice Court, exhibits

6   attached to Solis's March 2 Motion indicate that: (1) the issue of Gideon violation was before the

7   Tahoe Justice Court, (2) that the court was apparently unable to locate any records pertaining to

8   Solis's conviction, having purged documents dated prior to 1995, and (3) the El Dorado Superior

9   Court unambiguously issued its vacatur of Solis's conviction pursuant to Penal Code §1203.4.

10  Based on the foregoing discussion, Solis is not entitled to a re-sentencing that omits the prior

11  conviction in the Tahoe Justice Court from the computation of his criminal history.  As a

12  practical matter, whether the prior conviction in the Tahoe Justice Court counts in the

13  computation of Solis's criminal history category or not has no effect on the computation of the

14  category itself.  If the two convictions that were vacated by the Merced Superior Court are not

15  counted in computing Solis's criminal history category, the result would be a criminal history

16  category of II.  The subtraction of the one additional point that resulted from the conviction in the

17  Tahoe Justice Court would not make a difference in Solis's criminal history category.

18      As something of an aside, Solis's March 2 Motion raises two sets of concerns; both

19  implicating the care with which state courts apply the provisions of Penal Code section 1203.4.

20  On one hand, this court is concerned that, where a conviction in a state court is challenged on

21  grounds that allege "innocense or errors of law," a state court improperly grants the vacature

22  pursuant to Penal Code section 1203.4 as an expedient where the court lacks records or resources

23  adequate to decide the issue on the alleged merits.   In such circumstances, the failure of the state

24  court to consider the defendant's action to vacate his sentence on the merits pled may very well

25  foreclose the defendant's right to adjustment of his sentence in the federal court.  On the other

26  hand, where the state court has the records and resources to decide the challenge on its merits,

27

28                                          20

but decides to issue an ambiguous "one-size-fits-all" order that fails to notify the federal court of the basis for the vacatur, the defendant may unfairly benefit from having his sentence corrected pursuant to the expungement where correction would not be warranted pursuant to Hayden.

As matters currently stand, this court is not in a position to draw conclusions regarding the status of state court records, nor is it this court's present intent to foreclose the possibility that either party may be able to produce additional information pertaining to state court proceedings. Notwithstanding the court's concerns with the state of records in the state courts, it remains clear that Solis has set forth claims and provided evidence sufficient to entitle him to the relief he seeks with regard to the convictions vacated by the Merced Superior Court. The court will therefore issue an order to show cause why relief should not be granted to the extent re-sentencing is warranted in light of the vacatur of state convictions in Los Banos Municipal Court No. LBF5092, and in Merced Municipal Court Case MM138429. Similarly, the court will permit Solis to show cause why his March 2 Motion, as construed by the court to be a new section 2255 motion, should not be dismissed as regards the state conviction he suffered in Tahoe Justice Court case 940908.

THEREFORE, for the reasons discussed, it is hereby ORDERED that:

1.      Solis's motion for reconsideration of this court's order of February 3, 2010, is hereby GRANTED.

2.      Respondent United States shall show cause why relief should not be granted pursuant to Solis's March 2 Motion to the extent re-computation of Solis's criminal history category, and therefore his sentence, is warranted based on the vacatur of state convictions in Los Banos Municipal Court No. LBF5092, and in Merced Municipal Court Case MM138429. Respondent shall file a response to the court's order to show cause not later than twenty-eight (28) days from the date of service of this order. If Respondent does not oppose a grant of relief to the extent the court has discussed, Respondent shall file and serve a

notice of non-opposition not later than twenty-eight (28) days from the date of service of this order.

3.   Petitioner Solis may show cause why the court should not dismiss his March 2 Motion with regard to any contention of entitlement to correction of sentence based on the vacatur of his state conviction in Tahoe Justice Court case 940908.  Any response to the court's order to show cause shall be filed and served not later than twenty-eight (28) days from the date of service of this order.  Any non-response by Solis shall be construed by the court as non-opposition to this order to show cause.

4.   Either party may file and serve opposition to the other party's response to the court's order to show cause not later than twenty-one (21) days from the date the opposing party files their response to this order to show cause.

5.   The Clerk of the Court shall serve this order by mail on Solis at the most recent address indicated.


IT IS SO ORDERED.

Dated:   December 22, 2010

CHIEF UNITED STATES DISTRICT JUDGE

22